UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

THE ESTATE OF TONYA K. MEALMAN
BY SPECIAL ADMINISTRATOR ARIC BURCH,

     *Plaintiff,*

     *v.*

WISCONSIN MUNICIPAL MUTUAL INSURANCE COMPANY,
COUNTY OF BROWN, KELLY DELWICHE,
DALTON DESMOND, CHRIS PATTERSON,
DAVID NIEMIEROWICZ, JEFFREY RHODES,
JEFFREY LELINSKI,
WELLPATH, LLC (F/K/A CORRECT CARE SOLUTIONS, LLC),
DIANE JENSEN, DIRK LARSON, EMILY BLOZINSKI,
JESSICA DENISSEN, SARAH PAGELS,
AND ATALIE PRZYBELSKI

                                 Case No: 1:21-cv-820

     *Defendants.*

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT

---

The Estate of Tonya K. Mealman, by its attorneys, Strang Bradley, LLC, for its

complaint against Defendants, states:

### INTRODUCTION

1.     This is a civil rights action brought by Estate of Tonya K. Mealman for

damages under 42 U.S.C. § 1983. Tonya K. Mealman ("Tonya"), mother of two, age 32,

died early in the morning of 18 July 2016. She died at the Aurora Bay Care Hospital as a

result of injuries from hanging herself while being held in custody at the Brown County Jail.

2.	Minutes before Tonya hanged herself, Defendant Officer Dalton Desmond was supposed to do his rounds to check on the inmates in H block in the Brown County Jail around 10:00pm, as required by Department of Corrections Administrative Code § 350.18. At 10:04pm, Defendant Officer Chris Patterson made a false entry into the Brown County Jail computer system indicating that Defendant Desmond completed his inmate walk through check at 10:04pm, even though Defendant Patterson knew this was not true. At 10:13pm an inmate, Allison Topel, yelled "OH MY GOD" and that someone was hanging in the shower of H block. Defendant Desmond ran to the shower and saw that Tonya had hanged herself.

3.	In the days leading up to Tonya's death, she had become sick and despondent. She hadn't been eating and had been forcing herself to throw up. She discussed with fellow inmates that she had a plan to cut herself with a razor. She told them she would kill herself if she could. Tonya's fellow inmates were very concerned about her. They submitted written grievances and Green Bay Jail Health Services Unit (HSU), requests and made verbal requests asking for help for Tonya, asking for Tonya to be monitored, and telling Brown County Jail staff that Tonya was suicidal and was going to kill herself.

4.	Tonya also submitted a slip to the HSU, calling for help and saying she needed to see a psychiatrist ASAP. In the weeks before her death, Tonya had been asking for the medication she had been prescribed before she was booked into the jail. She had

begun asking for it in late June. Despite Tonya asking for her medication, staff at the jail didn't follow up with her medical provider until July 15th, and the jail staff didn't fill her prescription until the 16th—the date before she hanged herself.

5. In the two weeks before her death, at least eight of Tonya's friends, other inmates in H block, made requests to Brown County Jail Staff expressing concern for Tonya, saying she needed help, or warning that Tonya was going to kill herself.

6. Brown County Jail Staff, including Defendants Delwiche, Niemierowicz, and Rhodes personally received some of the complaints from Tonya's fellow inmates expressing concern for Tonya's mental health and risk of self-harm. Instead of taking the appropriate action and putting Tonya on suicide watch or getting her mental health treatment, Brown County Jail Staff, including Defendant Delwiche told the inmates that they weren't allowed to make mental health requests on behalf of another inmates, and refused to allow the inmates in H block to have razors for a few days.

7. Brown County Jail Staff, including Defendant Rhodes were also aware that Tonya had previously tried to hang herself in the shower on H block, the same shower where Tonya ultimately hanged herself.

8. Despite all of this, Brown County Jail Staff, including the Defendants failed to take action to protect Tonya, and instead Defendant Patterson and Desmond intentionally falsified reports to indicate they were only doing the minimum legally required observations of non-suicidal inmates. At the same time that Defendant Patterson was sitting at his computer making the fake inmate inspection report, Tonya was hanging herself in the H block shower.

9.      This lawsuit seeks to establish that it is a violation of Tonya's constitutional rights for Brown County Jail Staff to repeatedly ignore her request for mental health treatment and repeatedly ignore other inmates reports that she needed mental health attention and was at risk of committing suicide. It seeks to effect change through punitive damages by punishing the Defendants for their egregious failures with the hope that the punishment is significant enough to cause Brown County to adopt and enforce proper mental health procedures within the Brown County Jail, to cause Brown County Jail Staff to take action after repeatedly being informed that an inmate is suicidal, to ensure that Brown County Jail Staff don't continue to falsify legally required inmate inspection records with impunity, and to prevent something like this from happening again in the future, so that a person who is suffering from a suicidal mental health crisis while in the custody of the Brown County Jail receives at least the minimum constitutionally required care instead of being repeatedly ignored, denied prescription medication, denied proper mental health treatment, and left alone unmonitored to commit suicide.

## JURISDICTION AND VENUE

10.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Tonya Mealman's rights as secured by the United States Constitution.

11.      This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and the state law claims for indemnification pursuant to 28 U.S.C. § 1367.

12.      Venue is proper under 28 U.S.C. § 1391(b). Defendant Brown County is a political subdivision of the state of Wisconsin located within this judicial district.

Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

**PARTIES**

13.     The Plaintiff, the Estate of Tonya K. Mealman, is a legal entity with the capacity to sue and be sued.

14.     Defendant Brown County is a political subdivision of the state of Wisconsin and is and/or was the employer of the individual Defendants Delwiche, Niemierowicz, Rhodes, Desmond, Patterson, Jensen, Larson, Blozinski, Denissen, Pagels, Lelinski, and Przybelski. Pursuant to Wis. Stat. § 59.01, Brown County is authorized, inter alia, to sue and be sued. Brown County is a "person" for purposes of 42 U.S.C. § 1983. Brown County owns and operates the Brown County Jail. Acting through the Brown County Sheriff's Office, the County is responsible for training, supervising, and disciplining jail employees and contract staff working within the jail. Brown County is also responsible for adopting, implementing, and enforcing jail policies and practices, and ensuring that jail conditions and the medical treatment of detainees complies with the United States Constitution and other federal and state laws. Pursuant to Wis. Stat. § 59.27(1), Brown County acting through its Sheriff in his official capacity, cannot delegate away its constitutional duties regarding medical care for detainees. The County is liable for the jail policies, practices, and customs that caused the harm alleged, infra. Under Wis. Stat. § 895.46(1)(a), the County is required to pay or indemnify all judgments, including compensatory and punitive damages, costs, disbursements, and reasonable attorney's fees that may be awarded against its officials and employees who are liable for acts within the scope of their employment.

15.     Defendant Wisconsin Municipal Mutual Insurance Company ("WMMIC") is a domestic insurance company that issued an insurance policy insuring Brown County and its employees and agents against all liability imposed by law, and is a proper party defendant herein. WMMIC's principal business address is 4781 Hayes Road, Suite 201, Madison, Wisconsin 53704. Pursuant to the terms of this policy and Wisconsin law, defendant WMMIC is directly liable to Plaintiff for the conduct of its insureds described herein. The policy was in full force and effect at the date and time of the events described below.

16.     Defendant Kelly Delwiche was at the time of this occurrence employed as a correctional officer in the Brown County Jail. In that role, he was responsible for the health, safety, security, and welfare of detainees confined in the jail, including Tonya Mealman. Delwiche engaged in the conduct complained of while he was on duty and in the course and scope of his employment with Brown County.

17.     Defendant David Niemierowicz was at the time of this occurrence employed as a correctional officer in the Brown County Jail. In that role, he was responsible for the health, safety, security, and welfare of detainees confined in the jail, including Tonya Mealman . Niemierowicz engaged in the conduct complained of while he was on duty and in the course and scope of his employment with Brown County.

18.     Defendant Jeffrey Rhodes was at the time of this occurrence employed as a correctional officer in the Brown County Jail. In that role, he was responsible for the health, safety, security, and welfare of detainees confined in the jail, including Tonya Mealman.

6

Rhodes was engaged in the conduct complained of while he was on duty and in the course and scope of his employment with Brown County.

19.     Defendant Dalton Desmond was at the time of this occurrence employed as a correctional officer in the Brown County Jail. In that role, he was responsible for the health, safety, security, and welfare of detainees confined in the jail, including Tonya Mealman. Desmond engaged in the conduct complained of while he was on duty and in the course and scope of his employment with Brown County.

20.     Defendant Chris Patterson was at the time of this occurrence employed as a correctional officer in the Brown County Jail. In that role, he was responsible for the health, safety, security, and welfare of detainees confined in the jail, including Tonya Mealman. Patterson engaged in the conduct complained of while he was on duty and in the course and scope of his employment with Brown County.

21.     Defendant Jeffrey Lelinski was at the time of this occurrence employed as a correctional officer in the Brown County Jail. In that role, he was responsible for the health, safety, security, and welfare of detainees confined in the jail, including Tonya Mealman. Lelinski engaged in the conduct complained of while he was on duty and in the course and scope of his employment with Brown County.

22.     Defendant Wellpath, LLC ("Wellpath") f/k/a Correct Care Solutions is a foreign for-profit corporation incorporated under the laws of the State of Delaware, doing business in the State of Wisconsin. Wellpath's principal office is located at 1283 Murfreesboro Road, Suite 500, Nashville, Tennessee 37217, and its Registered Agent is Corporate Creations Network, Inc., 4650 West Spencer Street, Appleton, Wisconsin 54914.

7

As is relevant herein, Wellpath is a "person" for purposes of 42 U.S.C. § 1983. Following the incidents described herein, Correct Care Solutions ("CCS") changed its name to Wellpath. Upon information and belief, Wellpath is responsible for the assets and liabilities of CCS. CCS's acts and omissions at the Brown County Jail, including the acts and omissions of its employees and agents, were conducted under color of state law. Wellpath is legally liable for all CCS policies and practices referenced herein and for the acts and omissions of its employees, agents, and independent contractors, whether located at the Brown County Jail or elsewhere.

23. Defendant Diane Jensen was at the time of this occurrence employed as a registered nurse in the Brown County Jail. Jensen was employed at the Brown County jail as a contractor through Wellpath. In that role, she was responsible for the health and welfare of detainees confined in the jail, including Tonya Mealman. Jensen engaged in the conduct complained of while she was on duty and the course and scope of her employment at the Brown County jail through Wellpath.

24. Defendant Dirk Larson was at the time of this occurrence employed as a registered nurse in the Brown County Jail. Larson was employed at the Brown County jail as a contractor through Wellpath. In that role, he was responsible for the health and welfare of detainees confined in the jail, including Tonya Mealman. Larson engaged in the conduct complained of while she was on duty and the course and scope of his employment at the Brown County jail through Wellpath.

25. Defendant Emily Blozinski was at the time of this occurrence employed as a licensed practical nurse in the Brown County Jail. Blozinski was employed at the Brown

County jail as a contractor through Wellpath. In that role, she was responsible for the health and welfare of detainees confined in the jail, including Tonya Mealman. Blozinski engaged in the conduct complained of while she was on duty and the course and scope of her employment at the Brown County jail through Wellpath.

26.     Defendant Jessica Denissen was at the time of this occurrence employed as a registered nurse in the Brown County Jail. Jensen was employed at the Brown County jail as a contractor through Wellpath. In that role, she was responsible for the health and welfare of detainees confined in the jail, including Tonya Mealman. Denissen engaged in the conduct complained of while she was on duty and the course and scope of her employment at the Brown County jail through Wellpath.

27.     Defendant Sarah Pagels was at the time of this occurrence employed as a registered nurse in the Brown County Jail. Pagels was employed at the Brown County jail as a contractor through Wellpath. In that role, she was responsible for the health and welfare of detainees confined in the jail, including Tonya Mealman. Pagels engaged in the conduct complained of while she was on duty and the course and scope of her employment at the Brown County jail through Wellpath.

28.     Defendant Atalie Przybelski was at the time of this occurrence employed as a counselor in the Brown County Jail. Przybelski was employed at the Brown County jail as a contractor through Wellpath. In that role, she was responsible for the health and welfare of detainees confined in the jail, including Tonya Mealman. Prezybelski engaged in the conduct complained of while she was on duty and the course and scope of her employment at the Brown County jail through Wellpath.

29.     At all times relevant to this action, Defendants Delwiche, Niemierowicz, Rhodes, Desmond, Patterson, Jensen, Larson, Blozinski, Denissen, Pagels, Lelinski, and Przbelski were acting under color of state law, ordinance, and/or regulation. These Defendants are sued in their individual capacities.

## FACTS

30.     Plaintiff realleges the above paragraphs.

31.     Tonya K. Mealman died early in the morning of 18 July 2016. She died at the Aurora Bay Care Hospital as a result of injuries from hanging herself while in custody at the Brown County Jail.

32.     When Tonya was booked into the jail, on 27 June 2016, she was identified as a risk that suicide potential exists. She reported she had attempted suicide before, was being treated for her mental health, and was taking medications for depression and bi-polar disorder.

33.     Defendant Lelinski booked Tonya into the Brown County Jail and filled out a booking report and Suicide Screening Questionnaire.

34.     Tonya told Lelinski that she had previously attempted suicide and had been hospitalized for mental and emotional reasons, including self-harm.

35.     Lelinski noted the previous attempt and history of hospitalization in his booking report but recorded a "No" on the Suicide Screen Questionnaire where it asked whether Tonya had a history of suicidal behavior.

36.     Tonya's autopsy later showed that she had at least 68 cuts or scars on her left forearm.

37. Lelinski is required to document his observations of inmates in his booking report. Lelinski failed to document Tonya's scars in his booking report.

38. Lelinski failed to report to anyone that that Tonya was at risk of suicide or was a potential risk for suicide.

39. Brown County took Tonya into legal and physical custody as a pre-trial detainee, thereby establishing a special custodial and supervisory relationship toward her by Brown County and the individually named defendants herein to provide necessary medical care. Brown County contractually delegated and shared this duty with Wellpath. This special custodial and supervisory relationship consequently gave rise to affirmative contractual legal duties by Wellpath and its employees, agents, and contractors to secure Tonya's liberty interests and rights, including her physical safety, essential medical care and treatment, and her right to be free from unnecessary pain and suffering, substantive rights protected by the Fourteenth and Eighth Amendments to the U.S. Constitution – rights which Brown County and Wellpath violated.

40. In the weeks before her death, Tonya had been asking for the medication she had been prescribed before she was booked into the jail, staff at the jail didn't follow up on her request for weeks, and the jail staff didn't fill her prescription until the 16 June 2016 – the date before she hanged herself.

41. On 29 June 2016, Tonya submitted a form to the HSU asking for her medication and saying that she needed to see psychiatric doctor ASAP.

42. On 11 July 2016, an HSU staff member saw Tonya and gave her an initial medical health evaluation.

43.     Pamela Dejardin, a fellow inmate of Tonya's in H Block, had noticed that Tonya's mood had severely changed for the worse since Tonya had been booked into the jail about a week earlier. Tonya told Dejardin that she would kill herself if she had access to a razor. Dejardin filled out a form warning the Brown County Jail staff.

44.     As evidence that staff at the Brown County Jail were aware of Tonya's statements that she was going to kill herself by slitting her wrists with a razor, the women in H block were denied razors on 13 July 2016.

45.     Tonya also told her cell-mate, Roni Coonan-Anderson, that she was thinking about killing herself. Coonan-Anderson reported that Tonya was sick to Defendant Delwiche.

46.     Another inmate, Dottie Kieckbusch, had befriended Tonya in the jail. She noticed that Tonya was sick and not eating. Kieckbusch submitted a form to the HSU saying that she was very concerned about Tonya.

47.     Another inmate, LeDawn McDore, also noticed that Tonya was struggling and needed help. She later said that the jail officers had to know she was suicidal, and that the inmates had tried to warn them.

48.     Another inmate, Yetsitsyawaks Rangel, heard Tonya make comments about cutting herself with a razor. Rangel personally told Defendant Niemierowicz about Tonya's comments about a razor and that she thought that Tonya was suicidal.

49.     Another inmate, Tonya Smeester, noticed that Tonya was sick and needed help. She told a Brown County Jail nurse that Tonya needed her medication.

50. Another inmate, Allison Topel, noticed that Tonya was sick and needed help. She told Defendant Delwiche that Tonya had been making herself throw up and needed help.

51. Another inmate, April White, heard Tonya's comments about killing herself with a razor. White, too, told Defendant Niemierowicz about those comments.

52. Another inmate, Elizabeth Woods, noticed that Tonya needed help. She told Defendant Delwiche that Tonya was making herself throw up, and seemed to either be on opiates or severely depressed.

53. The Brown County Jail staff, including the Defendants, both ignored the women's calls to help Tonya and told them that they couldn't ask for help on behalf of another inmate.

54. Still, none of the Defendants placed Tonya on suicide watch, though they all had the power to do so.

55. On 15 July 2016, Defendant Przybelski called Tonya's doctor, who approved Tonya's medication request, but Pryzbelski did not mention Tonya's suicidal comments from the previous days.

56. Defendant Pryzbelski is also not legally qualified to accept, transmit, or transcribe telephone orders for prescription medication.

57. The doctor authorized Tonya to take Escitalopram, which is a prescription psychotropic medication.

58. Defendant Blozinski noted Pryzbelski's transcribed order for Escitalopram.

59.     Blozinski administered the Escitalopram to Tonya on 16 July 2016 but not on 17 July 2016.

60.     Neither Blozinski nor any HSU staff member ever spoke with the prescribing doctor about any effects or side effects of Escitalopram.

61.     Neither Blozinski nor any HSU staff member ever spoke with Tonya about the effects or side effects of Escitalopram or its abruptly discontinued use.

62.     On 17 July 2016, the women on H block were again denied razors.

63.     Tonya had been throwing up all night of 15 July 2016 and all day of 16 July 2016. Roni thought she was making herself throw up. Around 10:00pm on 17 July 2016, Roni noticed that Tonya had brought a garbage can into the shower. She thought that she was going to make herself throw up again. Roni saw Tonya bring the garbage can back to their cell. But she didn't see Tonya bring it back again into the shower.

64.     Tonya hanged herself shortly after 10:00pm on 17 July 2016.

65.     Defendants Brown County and Wellpath failed to have even a basic system in place for inmates to report active suicidal ideation.

66.     Upon information and belief, HSU staff Defendants Jensen, Larson, Blozinski, Denissen, and Pagels received written and verbal requests from the inmates regarding Tonya's need for medication and psychiatric attention and that she was at risk of self-harm.

67.     Despite being notified that she was potentially suicidal and knowing that Tonya had previously tried to hang herself in the shower on H block, jail staff did not place Tonya on suicide watch.

68.     Department of Corrections Administrative Code § 350.18 requires that county jails have policies and procedures relating to jail security, and specifically requires jails to have a system in place to ensure that every inmate is personally observed by jail security staff at staggered intervals of 60 minutes or less (and at intervals of 15 minutes or less for inmates on suicide watch), and that each inmate walk through inspection be documented.

69.     Defendant Desmond was responsible for completing the inmate walk through inspections of the H block of the jail during the second shift (from 3:00pm to 11:00pm) on 17 July 2016.

70.     The Brown County Jail records for inmate walk through inspections of the H block on 17 July 2016, state that Defendant Desmond performed an inmate walk through inspection of the H block at 8:02pm (noting "walk through ok"), and again exactly 60 minutes later at 9:02pm (again noting "walk through ok"), however Defendant Desmond failed to complete any inmate walk through inspection of the H block around 10:00pm, which would have been around the time that Tonya hanged herself.

71.     Despite Defendant Desmond failing to complete any inmate walk through inspection of the H block around 10:00pm on 17 July 2016, Defendant Patterson wrote in the Brown County Jail records for inmate walk through inspections of the H block on 17 July 2016 that Defendant Desmond performed an inmate walk through inspection of the H block at 10:04pm (and even copied the same notation "walk through ok"). The day after Tonya's death, Defendant Patterson admitted that he made the false walk through entry

indicating that Defendant Desmond performed an inmate walk through inspection of the H block at 10:04pm.

72.     Even if Defendant Patterson's false entry he wrote in the Brown County Jail records for inmate walk through inspections of the H block on 17 July 2016 at 10:04pm was true, it still would have resulted in the records showing a violation of Department of Corrections Administrative Code § 350.18.

73.     At 10:13pm an inmate yelled that something was hanging in the shower. Desmond ran to the shower and saw that Tonya had hanged herself.

74.     Over one year after Tonya's death, the Wisconsin Department of Corrections completed an administrative review of her death pursuant to Wis. Stat. § 301.37 and Department of Corrections Administrative Rule Chapter 350, which investigated Tonya's suicide.

75.     Despite Patterson and Desmond clearly reporting that they had not done a walkthrough around the time Tonya hanged herself, DOC Detention Facilities Specialist Nancy Thelen concluded that an "officer walk through tour was completed on 7/17/16 at approximately 10:04 p.m. indicating no unusual activity within the cellblock. The next officer walk through was completed at approximately 10:13 p.m. when Tonya Mealman was found hanging in the shower utilizing her jail uniform," and inmate checks and counts were completed within the policy and administrative code guidelines.

76.     Despite having reviewed inmate interviews recorded shortly after Tonya's death, Thelen concluded that Tonya made no indication to staff that she was in need of

Case 1:21-cv-00820-WCG   Filed 04/04/22   Page 16 of 24   Document 37

mental health services at the time of the incident and that there was no indication that Brown County Jail staff were aware that Tonya was suicidal.

## COUNT 1:

### 42 U.S.C. § 1983 Claim for deprivation of due process by deliberate indifference against non-medical staff Defendants

77.     Plaintiff realleges the above paragraphs.

78.     Tonya Mealman, at all times relevant to this complaint, was a pretrial detainee.

79.     Defendants Delwiche, Niemierowicz, Rhodes, Patterson, Lelinski, and Desmond were subjectively and objectively, deliberately indifferent to Tonya's serious medical condition of being suicidal.

80.     There was a strong likelihood that Tonya would commit suicide.

81.     Defendants Delwiche, Niemierowicz Rhodes, Patterson, Lelinski, and Desmond knew of that strong likelihood or strongly suspected the likelihood existed.

82.     The conduct of each of the Defendants Delwiche, Niemierowicz, Rhodes, Patterson, Lelinski, and Desmond's conduct, given their knowledge or strong suspicions, were objectively unreasonable.

83.     Had Defendants Delwiche, Niemierowicz, Rhodes, Patterson, Lelinski, and Desmond not acted in a manner that was objectively unreasonable, Tonya would not have hanged herself in the H block shower.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages against Defendants Delwiche, Niemierowicz, Rhodes,

Patterson, Lelinski, and Desmond, and because they acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action, attorneys' fees, and such other and further relief that the Court deems just and equitable.

## COUNT 2:

### 42 U.S.C. § 1983 Claim for deprivation of due process by deliberate

### indifference against medical staff Defendants

84.     Plaintiff realleges the above paragraphs.

85.     Tonya Mealman, at all times relevant to this complaint, was a pretrial detainee.

86.     Defendants Jensen, Larson, Blozinski, Denissen, Przybelski, and Pagels were subjectively and objectively, deliberately indifferent to Tonya's serious medical condition of being suicidal.

87.     There was a strong likelihood that Tonya would commit suicide.

88.     Defendants Jensen, Larson, Blozinski, Denissen, Przybelski, and Pagels knew of that strong likelihood or strongly suspected the likelihood existed.

89.     The conduct of each of the Defendants Jensen, Larson, Blozinski, Denissen, Przybelski, and Pagels, given their knowledge or strong suspicions, were objectively unreasonable.

90.     Had Defendants Jensen, Larson, Blozinski, Denissen, Przybelski, and Pagels not acted in a manner that was objectively unreasonable, Tonya would not have hanged herself in the H block shower.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages against Defendants Jensen, Larson, Blozinski, Denissen, Przybelski, and Pagels, and because they acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action, attorneys' fees, and such other and further relief that the Court deems just and equitable.

## COUNT 3:

### 42 U.S.C. § 1983 *Monell*[1] claim against Defendant Brown County and Wellpath

91.     Plaintiff realleges the above paragraphs.

92.     Defendant Brown County and Wellpath authorized, tolerated, ratified, permitted, or acquiesced in policies, practices, and customs, oral and written, pronounced, and *de facto*, including detainee medical decisions made irrespective of appropriate medical judgment, which were objectively unreasonable and exhibited substantial departure from accepted professional judgment, practices, and/or standards, and which were also deliberately indifferent to the safety and suffering of detainees with serious medical conditions, including Tonya Mealman in violation of her rights protected by the Fourteenth Amendment to the United States Constitution. These policies, practices, and customs were the moving force which caused the deprivation of Plaintiff's constitutional rights.

93.     Defendant Brown County and Wellpath failed to have a policy, custom, or practice that would allow inmates to report that another inmate is suicidal.

---

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

94.     Defendant Brown County and Wellpath failed to adequately supervise their employees.

95.     Defendant Brown County and Wellpath's policies, customs, practices, supervision of employees, or lack thereof was a direct cause or moving force which caused the deprivation of Plaintiff's constitutional rights.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands actual or compensatory damages against Defendant Brown County and Wellpath, plus the costs of this action, attorneys' fees, and such other and further relief that the Court deems just and equitable.

## COUNT 4:

## Indemnification claim against Brown County

96.     Plaintiff realleges the above paragraphs.

97.     Wisconsin law, WIS. STAT. § 895.46, requires public entities to pay any tort judgement for damages for which employees are liable, for acts within the scope of their employment.

98.     At all times relevant to this action, Defendants Delwiche, Niemierowicz, Rhodes, Desmond, Patterson, Jensen, Lelinski, Larson, Blozinski, Denissen, Przybelski, and Pagels engaged in the conduct complained of while in the course of and scope of their employment with Brown County.

WHEREFORE, Plaintiff asks this Court to find that Brown County is liable to defend this action against Defendants Delwiche, Niemierowicz, Rhodes, Desmond,

Patterson, Jensen, Lelinski, Larson, Blozinski, Denissen, Przybelski, and Pagels and to satisfy any judgment entered against them, by virtue of WIS. STAT. § 895.46.

## COUNT 5:

### 42 U.S.C. §§ 12111–213, Title II of the Americans with Disabilities Act ("ADA") claim against Brown County and Wellpath

99.     Plaintiff realleges the above paragraphs.

100.     Plaintiff Tonya Mealman is a qualified person under the ADA because she had a disability.

101.     Tonya was disabled in that she suffered from anxiety, depression, bi-polar disorder and suicidal ideation.

102.     Tonya's disabilities substantially limited major life activities, including breathing, concentrating, thinking, communicating, interacting with others, and caring for herself.

103.     Defendants Brown County and Wellpath failed to reasonably accommodate Tonya or discriminated against Tonya by not placing her on suicide watch, denying her medication requests, failing to adequately monitor her, and denying her mental health treatment.

104.     Brown County and Wellpath's failure to reasonably accommodate Tonya or their discrimination against Tonya because of her disability effectively denied Tonya's access to programs and activities in the Brown County Jail.

105.     Brown County and Wellpath's policies, procedures, and rules that prevent an inmate from reporting health or suicide concerns about another inmate disproportionally affects disabled people, especially those with mental illnesses and those who are suicidal.

WHEREFORE, pursuant to the ADA, Plaintiff demands actual or compensatory damages against Defendant Brown County and Wellpath, plus the costs of this action, attorneys' fees, and such other and further relief that the Court deems just and equitable.

## COUNT 6:

### 29 U.S.C. §§ 794–94e, Rehabilitation Act, claim against Brown County and Wellpath

106.     Plaintiff realleges the above paragraphs.

107.     Defendants Brown County and Wellpath receive federal funds.

108.     Plaintiff Tonya Mealman is a qualified person under the Rehabilitation Act because she had a disability.

109.     Tonya was disabled in that she suffered from anxiety, depression, bi-polar disorder and suicidal ideation.

110.     Tonya's disabilities substantially limited major life activities, including breathing, concentrating, thinking, communicating, interacting with others, and caring for herself.

111.     Defendants Brown County and Wellpath failed to reasonably accommodate Tonya or discriminated against Tonya by not placing her on suicide watch, denying her

medication requests, failing to adequately monitor her, and denying her mental health treatment.

112.    Brown County and Wellpath's failure to reasonably accommodate Tonya or their discrimination against Tonya because of her disability effectively denied Tonya's access to programs and activities in the Brown County Jail.

113.    Brown County and Wellpath's policies, procedures, and rules that prevent an inmate from reporting health or suicide concerns about another inmate disproportionally affects disabled people, especially those with mental illnesses and those who are suicidal.

WHEREFORE, pursuant to the Rehabilitation Act, Plaintiff demands actual or compensatory damages against Defendant Brown County and Wellpath, plus the costs of this action, attorneys' fees, and such other and further relief that the Court deems just and equitable.

## JURY DEMAND

115.    Plaintiff hereby demands a trial by jury, pursuant to FED. R. CIV. PRO. 38(b), on all issues so triable.

Respectfully submitted,

Dated: 29 March 2022

/s/ John H. Bradley
John H. Bradley
   Wisconsin Bar No. 1053124
R. Rick Resch
   Wisconsin Bar No. 1117722
STRANG BRADLEY, LLC
613 Williamson St., Suite 204
Madison, Wisconsin 53703
[608] 535-1550
John@StrangBradley.com
Rick@StrangBradley.com

Attorneys for Plaintiff