

**Sara C. Mills-Flood**
710 N. Plankinton Avenue
Suite 500
Milwaukee, WI 53203
Direct: (414) 290-7588
Email: smills@crivellocarlson.com

November 11, 2022

**VIA EMAIL ONLY**
Attorney John H. Bradley
Strang Bradley LLC
33 E. Main Street, Suite 400
Madison, WI 53703

Re: Estate of Tonya Mealman v. Brown County, et al.
Eastern District of Wisconsin.: 2021-CV-820
Our File No.: 0100-2101734

Attorney Bradley,

Please allow this letter to serve as a formal response to your requests to visit the Brown County Jail to inspect 1) the ERMA software system; 2) the OMS software system; 3) any paper file of Ms. Mealman's medical records; and 4) the Hotel Pod for a second time. Additionally, I am including a discussion of your draft Notice of Rule 30(b)(6) Deposition topics.

**ERMA Software Inspection**

As for the request to inspect the ERMA system, it is my understanding that Attorney Pytlik does not object to this request. Therefore, the County Defendants do not object to the request. However, it is the County Defendants' position that certain parameters must be followed during this inspection, including but not necessarily limited to the following: 1) a Wellpath employee from the Jail's HSU will need to operate the system during the inspection, as Jail employees cannot access and are not trained how to use the ERMA software; 2) other than things like log-in screens or other generic types of information, the only information you will be permitted to access will be Ms. Mealman's file in order to maintain medical confidentiality and to comply with HIPAA; 3) and counsel for the County Defendants must be present and will have the right to object to, and in good faith refuse to permit answer to, any questions asked of the Wellpath employee operating the system. If Attorney Pytlik has additional parameters that he wishes to be followed, the County Defendants will not object and defer to him.

MILWAUKEE, WI          EAU CLAIRE, WI          WAUWATOSA, WI          MUKWONAGO, WI          CHICAGO, IL          PEORIA, IL          EDWARDSVILLE, IL
(414) 271-7722         (715) 598-1730          (414) 451-6860         (262) 363-7720          (312) 523-2111       (309) 839-1946      (618) 655-0006

Case 1:21-cv-00820-WCG   Filed 12/03/22   Page 1 of 5   Document 72-2

**Paper Medical File**

As for the request to inspect Ms. Mealman's paper file of medical records, the County Defendants have no objection. To the extent that it would expedite this process and ensure that all parties have continuing access to that information, the County Defendants are certainly willing to provide copies to all counsel of any such medical records.

**OMS Software Inspection**

The County Defendants object to your request to inspect the OMS system for multiple reasons. Based on our conversation with you on November 7, 2022, we understand that you wish to view the process of clicking around or logging around in the system, you would like to see the process of inputting information related to rounds, and you would like to click around in Ms. Mealman's OMS file. However, it is our position that this request is duplicative, because all of this information has already been provided to you in various ways.

First, both Dalton Desmond and Chris Patterson provided extensive deposition testimony regarding the process of inputting rounds into the OMS system. In particular, I think we can all agree that Officer Patterson was very detailed and helpful with his testimony and answered all questions he was asked about this process. He even provided print-outs of screens showing what draft entries look like, where alerts show up on the screen, how to click around and interpret information, and he explained these documents and processes in great detail. You have also had an opportunity to ask the other County Defendants about the process of logging rounds during their depositions, and everyone has provided you with testimony on the topic when asked.

Next, you previously requested and were provided with extensive documentation regarding the OMS system, specifically 1,178 pages of the OMS manual that is used to train Brown County officers. A review of these materials shows that they also explain in detail how to navigate the system and what it looks like. The manual includes countless screenshots with explanatory labels and arrows identifying where things like alerts are located and the various methods that can be used to access any given type of information. The documents produced cover a wide range of topics, including alerts, booking, booking questions, classification, grievances, housing, incidents, inmate movements, and reports. The documents produced also include an overview of the OMS environment (BC-TKM 7850-7861), a system tour (BC-TKM 7802-7830), and a glossary of terms arranged both alphabetically and by topic (BC-TKM 7602-7607). Again, images of what each screen looks like are included throughout the manual.

Additionally, the County Defendants have already produced Ms. Mealman's entire jail file and all information contained in the OMS system related to her. I understand that some of the documents may look slightly different than they appear on the computer screen when printed to PDF, but the information provided by the OMS manual provides voluminous examples of how any given screen would look. Additionally, the documents produced by Officer Patterson at BC-TKM 9700-9702 show what the rounds screen looks like in Ms. Mealman's file specifically.

We also object to the request to inspect the OMS system based on concerns with how you intend to represent any information you glean, as we discussed during our call on Monday. The OMS system has undergone various upgrades since 2016, just as all software programs do. We do not believe that these impacted any substantive functionality of the system, but they may have included minor changes to the way certain information is displayed, accessed, or organized, or the screen layout. We do not believe it would be appropriate for you to make representations regarding how OMS is used or navigated or the way it looks based on an inspection of the software in 2022, and we would argue that any such representation would be inadmissible pursuant to Federal Rule of Evidence 403. Moreover, should you make representations to the court or to a jury regarding the OMS software based on an inspection, we believe that would subject you to cross-examination.

Further, while you suggested that the topic of software upgrades could be discussed at a Rule 30(b)(6) deposition, Brown County does not have any witness with sufficient technical knowledge to discuss this third-party software with that level of specificity. Instead, we believe that the OMS manual and the deposition testimony are the most accurate and reliable source of information regarding how the system looked and operated in 2016 and how officers were trained to use the system. And perhaps more importantly, the manual and deposition testimony provides you with information regarding how OMS was <u>actually</u> used by Brown County Jail corrections officers in 2016—something that simply cannot be replicated by allowing you to click around for an hour or two.

As a compromise, if there is a specific page or screen or tab of information from Ms. Mealman's file that you would like us to produce in a screen-shot format, the County Defendants will do so. However, at present, we are not aware of any concerns that the information already produced is somehow incomplete or that it in any way misrepresents the information contained in Ms. Mealman's OMS file.

**Second Inspection of Hotel Pod**

The County Defendants also object to a second inspection of Hotel Pod, as it is duplicative and unduly burdensome. In particular, you were permitted full and complete access to Hotel Pod during your first inspection on May 2, 2022, including access to all dayrooms in Hotel Pod, the officer's station, the pod's recreational room, the pod's bathrooms, the HSU area, and the booking area and sallyport. We allowed you as much time as you wanted, you were able to bring associates and a consultant with you, you were permitted to take photographs, Captain Michel accompanied us, and you were allowed to ask her certain questions. We have also provided you with a floorplan of Hotel Pod confirming the layout, and both officers and former inmates have provided a significant amount of testimony regarding the layout and appearance of the pod. Given the essentially unfettered access you have already been provided, the County Defendants cannot agree to a second inspection.

**Rule 30(b)(6) Notice – Schedule A Topics**

We have now had the chance to review your proposed Rule 30(b)(6) topics. I do have concerns about the sheer number of topics—56—and the fact that many of them pertain to medical care. In speaking with the jail, they believe that they lack the requisite level of knowledge, and that someone from HSU or a mental health professional would be the most knowledgeable and appropriate witness, about several healthcare-related topics, including:

1)m. Administration and delivery of medications;
1)n. Maintenance of medical records and orders;
1)o. Continuity of medications for inmates;
1)p. Continuity of medical care for inmates;
1)q. Obtaining medication records and medical records from outside providers;
1)r. Making and documenting decisions relating to the continuation or discontinuation of medications;
1)s. Monitoring inmates following the cessation of medications;
1)t. Scheduling of inmate appointments with the Health Services Unit;
1)w. Reviewing and responding to inmate requests for medical care;
1)kk. Assess inmate suicide risk;
6)c. Any changes made since 2016 regarding the continuity or discontinuation of medication, treatment of inmates deemed to be a suicide risk, and fulfillment of the initial health assessment;
9. Wellpath staff training of Brown County Jail staff from 2016 to today.

These topics fall almost entirely if not exclusively within the purview of Wellpath and the jail's contracted healthcare providers. As such, we ask that you

consider withdrawing these topics from the Rule 30(b)(6) Notice to Brown County.

Additionally, the number and breadth of topics does cause concern given the number of depositions already taken in this matter. It is almost certain that Brown County will have to produce more than one person as the person most knowledgeable to testify on this laundry list of topics. As such, we intend to produce the fewest number of deponents possible and will demand strict adherence to Rule 30(d)(1)'s seven-hour time limit.

Finally, we reiterate our request that these depositions occur in Green Bay. We have been extremely flexible and accommodating in your insistence on holding all party depositions in Madison, even though all of the County and Wellpath defendants are located in Green Bay and the attendant travel has resulted in significant inconvenience. Any 30(b)(6) witness for the County will necessarily be a high-level administrator whose absence from the jail requires one or more subordinates to step in to cover responsibilities and workload and possibly incur overtime. Eliminating six hours of travel and a possible overnight stay(s) in Madison would certainly lessen the burden on jail staff. Therefore, as a matter of professional courtesy, I am once again asking that you agree to hold this deposition(s) in Green Bay.

As for availability for Rule 30(b)(6) depositions, you previously suggested December 7, 8, 9, 12, 13, 15, or 16. The only dates of those on which I am available are December 9, 12, and 13. If at all possible, I would ask that we avoid December 12, as it is the date of my firm's annual, required ethics CLE. Otherwise, I am available December 19-21 as well. My paralegal was also able to speak with Yetsi Rangle again, who said she is available most of December but prefers a deposition time between 10:00 a.m. and 2:00 p.m. Ms. Rangel said she is not available at all in November.

Should you wish to discuss any of these issues further, please do not hesitate to contact me at your earliest convenience. Thank you.

Sincerely,

*s/ Sara C. Mills*

SARA C. MILLS

c: Attorney Paul Pytlik